## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **RUSSELL SPARKS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.: _____** |
| | § | |
| **GREAT NECK SAW** | § | |
| **MANUFACTURERS, INC.;** | § | |
| **O'REILLY AUTO ENTERPRISES,** | § | |
| **LLC d/b/a O'REILLY AUTO PARTS;** | § | |
| **and O'REILLY AUTOMOTIVE, INC.,** | § | |
| | § | |
| **Defendants.** | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff RUSSELL SPARKS and files this Plaintiff's Original Complaint, complaining of Defendants GREAT NECK SAW MANUFACTURERS, INC.; O'REILLY AUTO ENTERPRISES, LLC, d/b/a "O'REILLY AUTO PARTS"; and O'REILLY AUTOMOTIVE, INC. and would respectfully show the Court as follows:

## PARTIES

1.      Plaintiff RUSSELL SPARKS is a natural person and is a resident of Rowlett, Dallas County, Texas.  The last three digits of his Texas Drivers' License is 078 and the last three digits of his Social Security number are 460.

2.      Defendant GREAT NECK SAW MANUFACTURERS, INC. ("Great Neck") is a non-resident corporation, organized and existing under the laws of the State of New York, qualified to do business in the State of Texas, and engaging in business in the State of Texas within the meaning of section 17.042 of the Texas Civil Practice and Remedies Code.  Great Neck's principal

place of business is 165 E. 2ⁿᵈ Street, Mineola, NY, 11501 but may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, TX 78701, as its agent for service because this Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas.

3. Defendant O'Reilly Auto Enterprises, LLC, d/b/a O'Reilly Auto Parts is a Foreign Limited Liability Company, doing business in the state of Texas at all relevant times, and may be served with process by and through its registered agent for process CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, TX 75201.

4. Defendant O'Reilly Automotive, Inc. is a Foreign Corporation, doing business in the state of Texas at all relevant times, and may be served with process by and through its registered agent for process CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, TX 75201. Hereinafter Defendant O'Reilly Auto Enterprises, LLC, d/b/a O'Reilly Auto Parts and O'Reilly Automotive, Inc. will be referred to collectively as "O'Reilly Defendants".

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this case pursuant to 28 USC § 1332. The amount in controversy exceeds $75,000 and is between citizens of different States. Specifically, Plaintiff is a citizen of Texas, Defendant Great Neck is a citizen of New York, and the O'Reilly Defendants are citizens of Missouri.

6. Pursuant to 28 US Code § 1931, venue is proper because a substantial part of the events giving rise to this lawsuit occurred in Dallas County, Texas, which is located in the Northern District of Texas – Dallas Division as the O'Reilly Defendants' negligent acts and/or omissions took place in Dallas County.

## FACTUAL BACKGROUND

7.        On May 28, 2020, Plaintiff Russell Sparks went to the O'Reilly auto parts store located at 4001 Lakeview Parkway, Rowlett, Dallas County, Texas, 75088, Store 702. He rented item #67051 – an EverTough MacPherson strut spring compressor (model 67051). The cost to rent this item was $54.99. He was given invoice number 0702-358270. The O'Reilly Defendants failed to inspect the strut spring compressor before renting it to Mr. Sparks to determine if it was in proper working condition. The strut spring compressor at issue ("the Great Neck Product" or "the strut spring compressor") was manufactured by Defendant Great Neck.

8.        The following day, on May 29, 2020, Mr. Sparks was installing a lowering kit on his pickup truck, a 2018 Chevy Silverado, using the strut spring compressor. He had the coil springs compressed with the EverTough MacPherson strut spring compressor when the threaded rod of one of the strut springs snapped, breaking the bolt into two pieces.

9.        At the time the strut spring compressor broke, the spring had already been partially tightened down. Mr. Sparks was not touching or turning the wrench when the spring gave way, snapping in two in the bolt of the threaded rod, and forcing Mr. Sparks' hand down to the concrete, crushing his left middle finger down between the spring and the cement floor. As a result, Mr. Sparks lost a portion of his left middle finger. Furthermore, he still has no feeling in the remaining portion of his finger.

## CAUSES OF ACTION – STRICT PRODUCTS LIABILITY – Great Neck

10.        At all times material to this action, Defendant Great Neck was in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and/or supplying

EverTough MacPherson strut spring compressors, such as the one in question, for use in Texas and elsewhere throughout the United States.

11.     At the time the Great Neck Product left the control of Defendant Great Neck, it was defectively designed and/or manufactured and in an unreasonably dangerous to a person who might reasonably be expected to use it. Specifically, the Great Neck Product was defective because the design of the device was insufficient to withstand the pressure from normal use over the lifetime of the product.

12.     Upon information and belief, the Great Neck Product developed a crack in the threaded rod during repeated use due to a defective design and/or manufacturing process, allowing it to prematurely fail, known to be a cause of serious personal injuries. The Great Neck Product sustained a fatigue fracture in the threaded rod / bolt, which developed over time with the final catastrophic failure resulting in injuries and damages to Plaintiff. It is widely known, including to Defendant Great Neck, that failures in strut spring compressors occur frequently and the product has been referred to as the "widow maker."

13.     Furthermore, there were safer alternative designs to eliminate or significantly reduce such a possibility, including but not limited to, using material with a greater hardness or strength that would not prematurely fail. These alternatives were safer because the risks of injury from the Great Neck Product would be eliminated or significantly reduced in relation to the risk with the use of the product, had the produced been designed and/or manufactured in a way that the metal threaded rod would not prematurely fatigue and/or crack over time and during the life of the product. These alternatives would have prevented or significantly reduced the risk of injury without impairing the strut spring compressor's utility. These alternatives were technologically-feasible and economically feasible alternatives. The Great Neck Product should have been designed and

manufactured in a way that it could withstand the pressure being put on the product with repeated uses over the lifetime of the product, rather than prematurely failing.

14.     Further, the Great Neck Product was defectively marketed and unreasonably dangerous to a person who might reasonably be expected to use it because it lacked adequate, sufficient, conspicuous, and unambiguous warnings and instructions concerning the risks, dangers, hazards, and harms presented by its use, and a reasonable means to reduce such risks, dangers, hazards, and harms. Specifically, there were no warnings provided by Great Neck to the user on the risks, dangers, hazards, and harms presented by use of the Great Neck Product, nor did it provide any information on the reasonable means to reduce such risks, dangers, hazards, and harms, including but not limited to warnings that the threaded rod / bolt may fail, causing the product to snap in two under pressure.

15.     The Great Neck Product was expected to reach, and did reach, the user and/or consumer without substantial change to the condition in which it was sold. The strut spring compressor was in substantially the same defective condition on the date of the incident, as it was when it was placed in the stream of commerce by Defendant Great Neck.

16.     It was foreseeable to Defendant Great Neck that the strut spring compressor could, and would, be used in the manner that it was being used at the time of the incident at issue.

17.     The design and marketing defects discussed above were a proximate and/or producing cause of the incident and the severe injuries suffered by Plaintiff.

18.     The Great Neck product was dangerous to an extent beyond that which would have been contemplated by the ordinary user of the product, with the ordinary knowledge common to the relevant community of users as to the product's characteristics.

19.     Defendant Great Neck knew, or should have known, of the dangers of a defectively designed and marketed strut spring compressors, such as the one in question.  Defendant Great Neck, among other acts, did not adequately design the product, did not adequately test to determine whether design and/or marketing defects existed, and did not adequately warn end users, and intermediary users of the product of the potential existence and dangers of such defects.

20.     The design and marketing defects of the Great Neck Product, as described above, rendered it unreasonably dangerous and prevented it from functioning as it was intended because the dangers of fatigue failure in the rod / bolt were not safely and adequately reduced or eliminated.

## CAUSES OF ACTION – NEGLIGENCE as to Great Neck

21.     Plaintiff incorporates his "Strict Products Liability" allegations against Defendant Great Neck from above.  Defendant Great Neck had a duty to act reasonably and prudently in the design, marketing, and/or sale of the strut spring compressor in question.  Defendant Great Neck breached this duty by, among other acts and/or omissions, designing, marketing and/or selling a strut spring compressor -- the product in question, with design and marketing defects, as described above, that rendered the product unreasonably dangerous and prevented the product from functioning as it was intended.

22.     Defendant Great Neck knew, or should have known, of the dangers of a defectively designed and/or marketed strut spring compressor. These dangers included, but were not limited to, catastrophic fatigue failure resulting in personal injury. Defendant Great Neck, among other negligent acts, did not adequately design the product to reduce or eliminate these dangers, did not adequately test to determine whether design and marketing defects existed in the strut spring compressor, and did not adequately warn end users, and intermediary users of the product of the

potential existence and danger of such defects. Defendant Great Neck's negligence was a proximate cause of damages to Plaintiff.

**CAUSES OF ACTION – NEGLIGENCE as to O'Reilly Defendants**

23.     Defendant O'Reilly Auto Parts and/or O'Reilly Automotive, Inc. ("O'Reilly") was negligent, among other ways, in:

    a.     Failing to properly instruct and/or warn Mr. Sparks regarding the proper use of the strut spring compressor;

    b.     Failing to perform inspections of the strut spring compressor, including but not limited to any magnetic particle inspection and/or penetrant inspection;

    c.     Failing to perform an inspection of the strut spring compressor prior to renting it to Plaintiff; and,

    d.     Other acts of negligence.

24.     O'Reilly's actions and inactions breached the applicable standard of care in Texas at the time in question which forms the basis of this lawsuit. Furthermore, O'Reilly's breach of the standard of care proximately caused injuries and damages to Plaintiff.

25.     Each of the foregoing acts or omissions, singularly or in combination with others, constituted negligence, which proximately caused the above-referenced occurrence and Plaintiff's injuries and damages.

**RESPONDEAT SUPERIOR as to O'Reilly**

26.     The O'Reilly Defendants are vicariously liable for the negligent acts and/or omissions by its employees pursuant to the doctrine of respondeat superior, because the employee(s) who rented Mr. Sparks the strut spring compressor and/or failed to inspect the strut

spring compressor, and/or who failed to instruct, and/or warn Mr. Sparks, were acting in the course and scope of their employment with O'Reilly at all relevant times.

**CAUSES OF ACTION – NEGLIGENT HIRING AND SUPERVISION as to O'Reilly**

27.     The O'Reilly Defendants are liable because they did not use ordinary care in hiring, supervising, training, and /or retaining its agent and/or employee(s) who rented the strut spring compressor to Mr. Sparks and/or who failed to inspect the strut spring compressor, and/or who failed to instruct and/or warn Mr. Sparks, as alleged in the respondeat superior section of this pleading, above, and the breach of the applicable standard of care by Defendants, as described above, proximately caused injuries to Plaintiff.

**CAUSATION**

28.     The above-described acts and/or omissions of Defendants were singularly and severally the proximate cause of the occurrence in question and resulting injuries and damages sustained by Plaintiff.

**PERSONAL INJURIES AND DAMAGES**

29.     As a result of Defendants' actions, Plaintiff suffered severe bodily, economic, and mental injuries.  Consequently, Plaintiff seeks the following damages:

a.  Medical Expenses:  Plaintiff has incurred bodily injuries which were caused by the incident in question.  Plaintiff has incurred medical expenses in the past and will continue to incur them in the future.

b.  Physical Pain:  Plaintiff has endured physical pain in the past and will endure pain in the future.

c.  Mental Anguish:  Plaintiff has endured mental anguish in the past and will endure mental anguish in the future.

d.  Loss of Earning Capacity: Plaintiff has suffered a loss of earnings in the past, and will continue to suffer a loss of earning capacity in the future.

e.  Disfigurement: Plaintiff has endured disfigurement in the past and will continue to suffer from disfigurement in the future.

f.  Impairment: Plaintiff has endured physical impairment in the past and will continue to suffer the impairment in the future.

30.     In all reasonable probability, Plaintiff will continue to suffer from these injuries for the rest of his life, and Plaintiff seeks compensation for such future damages.

## EXEMPLARY DAMAGES

31.     Plaintiff is entitled to exemplary damages under Chapter 41 of the Texas Civil Practice and Remedies Code from Defendant Great Neck and the O'Reilly Defendants because Defendants' acts and/or omissions, when viewed objectively from the standpoint of Defendants at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

## JURY TRIAL

32.     Plaintiff respectfully requests a jury trial in the above entitled and numbered cause. A jury fee is being tendered to the Clerk.

## PRAYER

33.     Plaintiff prays that Defendants be cited to appear and answer, and that upon final hearing hereof, Plaintiff receives judgment from the Defendants for:

a.     Judgment against Defendants for a sum within the jurisdictional limits of this Court for the damages as pled;

b.     Pre-judgment and post-judgment interest at the maximum amount allowed by law;

c.        Costs of suit; and

d.        Such other and further relief to which Plaintiff may be justly entitled.


Respectfully submitted,

**CRAIN BROGDON ROGERS, L.L.P.**

*/s/ Sarah L. Rogers*
**ROBERT D. CRAIN**
State Bar No. 00790525
**SARAH L. ROGERS**
State Bar No. 24046239
3400 Carlisle Street, Suite 200
Dallas, Texas 75204
Phone: (214) 522-9404
Fax: (214) 969-5522
Email: rcrain@cbrlawfirm.com
Email: srogers@cbrlawfirm.com

**ATTORNEYS FOR PLAINTIFF**